

FILED

OCT 1 4 2008

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN THE MATTER OF** | **MISCELLANEOUS** |
| **ASHTON R. O'DWYER, JR.** | **NO. 08-1492 "B"** |

**RESPONDENT'S MOTION**
**FOR RECUSAL OF JUDGE LEMELLE**
**ON GROUNDS OF BIAS, PREJUDICE AND PARTIALITY**

**COMES NOW** Respondent, Ashton R. O'Dwyer, Jr., and moves for the recusal

of The Honorable Ivan L.R. Lemelle in these proceedings on grounds of bias, prejudice

and partiality. This motion is filed pursuant to the provisions of 28 U.S.C. §144 and/or

28 U.S.C. §455(a) and/or 28 U.S.C. §455(b)(1), without prejudice to the grounds for

Judge Lemelle's recusal previously asserted by Respondent in these proceedings,

including the fact that Judge Lemelle has a conflict of interests, because he is a named

defendant in Civil Action No. 08-3170 on the docket of this Court,[1] as well as Judge

Lemelle's bias and prejudice, and his inability to be fair and impartial in these

proceedings, which Respondent avers were brought against him in retaliation for

Respondent's allegations of judicial misconduct against a "Brother Judge" of Judge

Lemelle, namely Stanwood R. Duval, Jr.[2] Since the proceedings which were held in

Open Court on October 8, 2008, during which Judge Lemelle made a Report and

---

[1] Three (3) judges, namely Judges Fallon, Feldman and McNamara, have already recused themselves
from cases involving Respondent for this very same reason.

[2] And in retaliation for Respondent's suing the State of Louisiana in "Victims of KATRINA" litigation,
arguing waiver of 11th Amendment immunity by the State, and seeking disqualification of some "high
profile" plaintiffs' lawyers, one of whom is a "close personal friend of long-standing" to Judge Duval, and
who represented the interests of the State in the "Victims of KATRINA" litigation, at least until Thursday,
October 9, 2008.

___ Fee_____
___ Process KBH
_X_ Dktd_____
___ CtRmDep____
___ Doc. No. 17

Recommendation "on the record" that Respondent's privileges to practice law before this Court should be suspended, it has been brought to Respondent's attention that Judge Lemelle is himself a well-documented "rule breaker", who has violated the Code of Conduct for United States Judges, all as more fully appears in the reported case of "In Re: High Sulphur Content Gasoline Products Liability Litigation, 517 F.3d 220 (5th Cir. 2008), a copy of which is appended hereto as Exhibit No. 1.  In that case Judge Lemelle also is believed to have made very generous awards of attorney's fees to some of the very same plaintiffs' attorneys whose disqualification Respondent has sought in "Victims of KATRINA" litigation as a result of their violation of the Rules of Professional Conduct. Further, although Respondent avers that Judge Lemelle was under an ethical and legal obligation to do so, Judge Lemelle failed to disclose to Respondent in these proceedings either his extra-judicial relationship(s) with some of the very same plaintiffs' attorneys in "Victims of KATRINA" litigation, as well as his own judicial misconduct and abuse of discretion as documented in the cited case, which included prohibited ex parte communications, a penchant for secrecy, and other abuse of judicial power, all resulting in denial of due process of law to certain litigants and their attorneys.  Had Respondent known about those matters[3] prior to the time that Judge Lemelle made his Report and Recommendation in these proceedings on October 8, 2008, then Respondent would have voiced objection then, and does so now.  Additional grounds for Judge Lemelle's recusal in these proceedings appear in Exhibit No. 1 and in the memorandum filed simultaneously herewith.

---

3 And the fact that Respondent's attempt to have Judge Duval recused in "Victims of KATRINA" litigation was cited to Judge Lemelle by the "Fee Committee" in the cited proceedings, in opposition to efforts to have Judge Lemelle recused in that case, another fact which was not disclosed to Respondent by Judge Lemelle.  Record Document No. 210 in Civil Action No. 04-1632.  Respondent avers that he was defamed in the Fee Committee memorandum, and that Judge Lemelle became "poisoned" towards Respondent.

Respectfully submitted,

_____

**Ashton R. O'Dwyer, Jr.**
**In Proper Person**
**Law Offices of Ashton R. O'Dwyer, Jr.**
Bar No. 10166
821 Baronne Street
New Orleans, LA 70113
Tel.:  (504) 679-6166
Fax.  (504) 581-4336

ultimately decided that it was important to impose a sentence "consistent with that imposed in other courts for people who are involved with dealing in methamphetamine," and therefore gave Go a sentence within the Guidelines range. (J.A. 211–212.) The district court imposed a sentence at the lowest end of that range.

It is clear from the sentencing record that the district court was not under the misapprehension that it could not impose a sentence outside of the advisory Guidelines range. Thus, we disagree with Go's contention otherwise.

**B.**

[3] Next, Go argues unpersuasively that even if the district court understood its authority to impose a variance sentence, his sentence was unreasonable. We disagree. After correctly calculating the Guidelines range, the district court considered the § 3553(a) factors and gave due consideration to whether there were any circumstances in Go's case that would warrant imposing a sentence below the Guidelines range. The district court then imposed a sentence at the very bottom of the range. As we have held before, a sentence imposed within the Guidelines sentencing range is presumptively reasonable. *See, e.g., Battle,* 499 F.3d at 322; *see also Rita,* 127 S.Ct. at 2462 (holding the courts of appeals may apply a presumption of reasonableness to within-Guidelines sentences); *Gall,* 128 S.Ct. at 597 (2007). We find that the district court's decision to sentence Go to 188 months is reasonable.

**IV.**

For the foregoing reasons, we affirm the district court's decision.

*AFFIRMED*



---

In re: HIGH SULFUR CONTENT GASOLINE PRODUCTS LIABILITY LITIGATION.

Frank A. Silvestri, John P. Massicot, Silvestri & Massicot, Peter D. Derbes, Stephen B. Murray, Stephen B. Murray, Jr., Murray Law Firm, Carroll Farmer, Appellants,

v.

John W. (Don) Barrett, Richard J. Arsenault, Walter C. Dumas, Patrick E. Geraghty, Ben Barnow, Appellees.

No. 07–30384.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 2008.

**Background:** Consumers brought lawsuits against refinery operator, alleging that it produced contaminated gasoline. After suits were consolidated into federal class action, and settlement was approved, the United States District Court for the Eastern District of Louisiana, Ivan L.R. Lemelle, J., entered order allocating lump-sum attorney fees award of $6.875 million among consumers' attorneys. Some of consumers' attorneys appealed.

**Holdings:** The Court of Appeals, Edith H. Jones, Chief Judge, held that:

(1) District Court abused its discretion in applying class action principles to allocation of fee award when, inter alia, it was persuaded at ex parte hearing to accept allocation proposal of fees committee, and

(2) District Court violated rule governing attorney fee hearings in class actions when it held its hearing ex parte.

---

Vacated and ren

Reavley, Circuit
curring opinion.

**1. Federal Civil**

The *Johnso*
the amount of a
(1) the time an
novelty and diff
the skill requis
service properly
er employment
acceptance of th
fee; (6) whether
gent; (7) time l
client or the
amount involved
(9) the experier
of the attorneys
ability of the c
length of the pr
the client; and
cases.

**2. Federal Cou**

The Court
trict court's atto
of discretion.

**3. Federal Cou**

In reviewin
the Court of
whether the re
the district cou
framework as th
not proceeded i
has arrived at a
to be just compe

**4. Attorney and**

A district
appoint a comm
to recommend b
gate attorney fe
settlement. Fe
28 U.S.C.A.

cated and remanded.

Beavley, Circuit Judge, filed specially concurring opinion.

**1. Federal Civil Procedure ⚖=2737.4**

The *Johnson* factors for determining the amount of an attorney fees award are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

**2. Federal Courts ⚖=830**

The Court of Appeals reviews a district court's attorney fee awards for abuse of discretion.

**3. Federal Courts ⚖=763.1**

In reviewing an attorney fees award, the Court of Appeals must determine whether the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation.

**4. Attorney and Client ⚖=155**

A district court can in its discretion appoint a committee of plaintiffs' counsel to recommend how to divide up an aggregate attorney fees award in a class action settlement. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**5. Attorney and Client ⚖=155**

A district court's appointment of a committee of plaintiffs' counsel to recommend how to divide up an aggregate attorney fees award in a class action settlement does not relieve the court of its responsibility to closely scrutinize the allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards. Fed.Rules Civ. Proc.Rule 23, 28 U.S.C.A.

**6. Federal Civil Procedure ⚖=2737.13**

The district court has an independent duty under the class action rule to the class and the public to ensure that attorney fees are reasonable and divided up fairly among plaintiffs' counsel. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**7. Attorney and Client ⚖=155**

A district court's duty to ensure that attorney fees are reasonable and divided up fairly among plaintiffs' counsel in a class action suit is no less compelling in common fund cases where a separate fund to pay attorney fees is created as part of the class action settlement. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**8. Attorney and Client ⚖=155**

A district court must not cursorily approve the attorney fee provision of a class settlement or delegate that duty to the parties. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**9. Attorney and Client ⚖=155**

Although exacting judicial review of attorney fee applications in class action settlements may be burdensome, it is necessary to discharge the district court's obligation to award fees that are reasonable and consistent with governing law. Fed. Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**10. Federal Civil Procedure ⊃2737.13**

To assess attorney fees in a class action suit, a district court must use the lodestar method, under which it is required first to determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney, and then to compute the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate. Fed.Rules Civ. Proc.Rule 23, 28 U.S.C.A.

**11. Federal Civil Procedure ⊃2737.13**

In using the lodestar method to assess attorney fees in a class action suit, a district court may adjust the lodestar upward or downward after a review of the 12 *Johnson* factors. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**12. Federal Civil Procedure ⊃2737.13**

After a district court, in assessing attorney fees in a class action suit, calculates the lodestar, it must scrutinize the fee award under the *Johnson* factors and not merely ratify a pre-arranged compact. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**13. Federal Civil Procedure ⊃2737.13**

When a district court awards attorney fees in a class action suit it must explain how each of the *Johnson* factors affects its award. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**14. Federal Courts ⊃763.1**

A district court's *Johnson* analysis, employed in assessing attorney fees in a class action suit, need not be meticulously detailed to survive appellate review. Fed. Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**15. Federal Courts ⊃763.1**

If a district court has articulated and clearly applied the correct criteria in conducting its *Johnson* analysis of attorney fees in a class action suit, the Court of

Appeals will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**16. Federal Civil Procedure ⊃2742.5**

A district court's findings and reasons, in conducting its *Johnson* analysis of attorney fees in a class action settlement, must be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**17. Attorney and Client ⊃155**

District court used flawed procedures, and thus abused its discretion, in applying class action principles to allocation of $6.875 million attorney fee award among plaintiffs' attorneys in common fund case, when court was persuaded at ex parte hearing, apparently without benefit of supporting data, to accept allocation proposal of fees committee made up of some of the plaintiffs' attorneys, and court sealed individual awards, prevented all counsel from communicating about awards, required releases from counsel who accepted payment, and limited its own scope of review of objections to allocation. Fed.Rules Civ. Proc.Rule 23, 28 U.S.C.A.

**18. Attorney and Client ⊃155**

Although a district court is not forbidden from relying on attorney fee allocation proposals submitted by attorneys in class action settlements, a proposal must be factually supportable and consistent with the *Johnson* factors. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**19. Records ⊃32**

A district court has the discretion to seal a record, but this discretion should be used with care.

**20. Federal Civil Procedure ⊃**

Attorney fee disputes in settlements, like other litigation tions at stake, ought to be litiga Fed.Rules Civ.Proc.Rule 23,

**21. Federal Civil Procedure ⊃**

District court's order, rec attorney fees be distributed i from common fund in class ac ment, violated rule imposing te matic stay on enforcement of Fed.Rules Civ.Proc.Rule 62(a),

**22. Attorney and Client ⊃155**

**Federal Civil Procedure ⊃**

District court violated rul attorney fee hearings in class a it held ex parte hearing to revie for allocation of attorney fees mon fund in class action set committee made up of some c counsel, notwithstanding that nonmembers failed to object ment of committee, where r had no post-allocation opport heard, since court also sealed fe list and placed gag order on such that they could not cor awards to those of other atto district court limited its own fee award to its specific circum relationship between award an contributions to common bene Fed.Rules Civ.Proc.Rule 23(h),

**23. Constitutional Law ⊃401**

If a court chooses to hold ; fee determination hearing follc ment of a class action suit, format itself has to be fair; in c when a judge constructs a setting fees, the process mus least the procedural minima cess, which are notice and an to be heard. U.S.C.A. Cons Fed.Rules Civ.Proc.Rule 23(h),

IN RE HIGH SULFUR CONTENT GASOLINE PRODUCTS LIAB.

Cite as 517 F.3d 220 (5th Cir. 2008)

**20. Federal Civil Procedure ⟐2737.13**

Attorney fee disputes in class action settlements, like other litigation with millions at stake, ought to be litigated openly. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**21. Federal Civil Procedure ⟐928**

District court's order, requiring that attorney fees be distributed immediately from common fund in class action settlement, violated rule imposing ten-day automatic stay on enforcement of judgments. Fed.Rules Civ.Proc.Rule 62(a), 28 U.S.C.A.

**22. Attorney and Client ⟐155**

**Federal Civil Procedure ⟐2737.13**

District court violated rule governing attorney fee hearings in class actions when it held ex parte hearing to review proposal, for allocation of attorney fees from common fund in class action settlement, by committee made up of some of plaintiffs' counsel, notwithstanding that committee nonmembers failed to object to appointment of committee, where nonmembers had no post-allocation opportunity to be heard, since court also sealed fee allocation list and placed gag order on attorneys, such that they could not compare their awards to those of other attorneys, and district court limited its own review of a fee award to its specific circumstances and relationship between award and attorneys' contributions to common benefit of class. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**23. Constitutional Law ⟐4019**

If a court chooses to hold an attorney-fee determination hearing following settlement of a class action suit, the hearing format itself has to be fair; in other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima of due process, which are notice and an opportunity to be heard. U.S.C.A. Const.Amend. 5; Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**24. Federal Civil Procedure ⟐1951**

Ex parte proceedings are an exception to the rule in the judicial system and contrary to its adversarial nature. Fed.Rules Civ.Proc.Rules 5(a), 6(d), 28 U.S.C.A.

---

John D. Sileo, Dane S. Ciolino (argued), New Orleans, LA, for Appellants.

F.A. Little, Jr. (argued), Stanley, Flanagan & Reuter, New Orleans, LA, for Appellees.

Walter C. Dumas, Dumas & Associates, Baton Rouge, LA, pro se.

Patrick E. Geraghty, Geraghty, Dougherty & Edwards, Fort Myers, FL, pro se.

Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, LA, pro se.

John William Barrett, Barrett Law Office, Lexington, MS, pro se.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before JONES, Chief Judge, and REAVLEY and SMITH, Circuit Judges.

EDITH H. JONES, Chief Judge:

Lead Plaintiffs' Counsel in this class action case persuaded the district court to divide up a $6.875 million lump sum attorneys' fee award among more than six dozen plaintiffs' lawyers according to Lead Counsel's proposed allocation. This might be permissible, except that the court was so persuaded in an ex parte hearing and apparently without benefit of supporting data. The court further accepted Lead Counsel's proposed order sealing the individual awards; preventing all counsel from communicating with anyone about the awards; requiring releases from counsel

who accepted payment; and limiting its own scope of review of objections to the allocation. These and other facets of the court's process are unauthorized and objectionable. Pursuant to the appeal of attorneys who challenged their awards, we VACATE the order approving the allocation and REMAND.

## I. BACKGROUND

During 2004, Shell Oil Co.'s Norco, Louisiana refinery allegedly produced contaminated gasoline that was purchased and used by thousands of motorists, damaging, inter alia, their fuel gauges. The consumers filed numerous lawsuits against Shell, which were consolidated in a federal class action. Before a settlement was reached, Shell undertook a program to repair motorists' broken fuel gauges.

In September 2005, Shell agreed to settle the class action by expanding its voluntary repair program, paying $3.7 million to cover general damages for plaintiffs who filed repair claims, and setting aside $6.875 million to pay the plaintiffs' attorneys' fees, costs, and expenses. After a final fairness hearing, the district court approved the settlement and the aggregate attorneys' fee award.

When the court approved the attorneys' fee award, which was unobjected to, it also appointed a five-member Fee Committee to allocate the fee award among approximately thirty-two law firms and seventy-nine plaintiffs' attorneys who worked on the case. The committee consisted of co-lead counsel, John Barrett and Ben Barnow, and three other plaintiffs' attorneys, Walter Dumas, Patrick Geraghty, and Richard Arsenault ("Appellees").[1] The court's final approval order stated that any

dispute concerning the fee allocation would be subject to its exclusive jurisdiction.

The Fee Committee then invited plaintiffs' attorneys to submit statements (a) explaining their contributions to the common benefit of the class and (b) evaluating the contributions of other attorneys. It appears that the Fee Committee already possessed the attorneys' time and expense statements because co-lead counsel had requested these statements around August 2005, presumably to help calculate the aggregate attorneys' fee award for the class action settlement. The record on appeal, however, does not include the time and expense statements of any plaintiffs' counsel except those of Appellants Frank Silvestri, John Massicot, Peter Derbes, Stephen Murray, Stephen Murray, Jr. ("Appellants"), and Ronnie Penton.[2]

The Fee Committee presented its proposed fee allocation to the district court on January 22, 2007 at an ex parte status conference. None of the other seventy-four plaintiffs' attorneys, including Appellants, were notified of the hearing, nor were they shown the allocation proposal or the proposed order approving the Committee's allocation of fees and costs.

Also unbeknownst to the other attorneys, the proposed order went far beyond the allocation of fees. The order (a) placed under seal the document prepared by the Fee Committee listing each attorney's fee award ("Exhibit A"); (b) prohibited each plaintiffs' attorney from disclosing to anyone, including his clients and other attorneys, the amount of his award under penalty of sanctions to be imposed by the court; (c) required fees, costs, and expenses to be "distributed immediately;" (d) mandated that fee award checks bear a

and final release;[3] and the district court's process any objections to fee award

The transcript of the ex and the court's fee allocatic that the Fee Committee pre with documentation to sup mendation. For exampl court stated during the ex that it had received "each ney's responses." The cou that the Fee Committee court "material" in conne hearing. Further, the o court was "provided with tion submitted as well as the Fee Committee. Co vague statements, the re includes no "responses" f neys other than Appellan any "material," "documen port" from the Fee Comm Exhibit A and the propose

At the ex parte heari court asked the Fee Co wanted the court to seal tl list. Barrett responded tl individual fee awards cor prevent lawyers from figh that they could not compa that during the past ten other judges have "go[ne] dentiality dynamic." Bar

**3.** The court's order stated: distributed immediately an following language: 'In con of all attorneys' fees, cos claimed due and owing pursuant to In Re High Sul line Products Liability Litig and all other claims, if any, their successors and assig way thereto.' "

**4.** The court's order stated: any appeal or objection, th tain those de novo. If the any adjustment is warrante be decreased or increased

**1.** Ronnie Penton initially objected to his fee allocation but he later withdrew his objection.

**2.** Ronnie Penton initially objected to his fee allocation but he later withdrew his objection.

fall and final release;[3] and (e) established the district court's process for dealing with any objections to fee awards.[4]

The transcript of the ex parte hearing and the court's fee allocation order suggest that the Fee Committee provided the court with documentation to support its recommendation. For example, the district court stated during the ex parte hearing that it had received "each individual attorney's responses." The court also indicated that the Fee Committee had given the court "material" in connection with the hearing. Further, the order states the court was "provided with the documentation submitted as well as a report" from the Fee Committee. Contrary to these vague statements, the record on appeal includes no "responses" from any attorneys other than Appellants, and it lacks any "material," "documentation," or "report" from the Fee Committee other than Exhibit A and the proposed order.

At the ex parte hearing, the district court asked the Fee Committee why it wanted the court to seal the fee allocation list. Barrett responded that keeping the individual fee awards confidential would prevent lawyers from fighting over awards that they could not compare. He asserted that during the past ten to fifteen years other judges have "go[ne] with this confidentiality dynamic." Barrett specifically

cited another federal district court in Louisiana that had recently placed under seal the fee allocation list associated with its order awarding individual attorneys' fees.[5]

The district court also asked the Fee Committee about the process it used to make its fee allocation recommendations. Arsenault and Barrett responded that the Fee Committee considered, among other things, the benefits of the attorneys' work to the class as a whole and their hourly billing rates. Barrett highlighted two firms whose recommended fee allocations were lower than their requests. He asserted that these firms "really ... didn't do anything for the common benefit and caused us trouble and caused the plaintiffs almost killing the settlement." Barrett was referring to the Appellants, Silvestri and Derbes, who "almost killed the settlement" by sending a letter to their clients about the proposed settlement that caused 101 of them to opt-out. Barrett did not point out that this situation had been resolved by sending a curative notice to these clients, and most of them ultimately chose not to opt-out of the settlement.

Pertinent to the Murray Appellants, Barrett said nothing explicit but left the district court with the impression that all plaintiffs' firms other than Silvestri's and Derbes's had received compensation based

---

3. The court's order stated: "Funds will be distributed immediately and will include the following language: 'In complete satisfaction of all attorneys' fees, costs, and expenses claimed due and owing as a result of or pursuant to In Re High Sulfur Content Gasoline Products Liability Litigation, MDL 1632, and all other claims, if any, of the payee, and their successors and assigns, related in any way thereto.'"

4. The court's order stated: "Should there be any appeal or objection, the Court will entertain those de novo. If the Court determines any adjustment is warranted, the award may be decreased or increased depending on the

specific factual circumstances and based on the Court's review of individual issues related solely to that award and their relation to common benefit based on factors noted herein, and not based on any comparison to other awards. If any adjustments are made anyone having previously accepted their individual allocation will be subject to a pro rata adjustment, i.e., proceeds may have to be returned to fund increases or there may be additional payments if awards are decreased."

5. See In re Eunice Train Derailment, No. 6:00-CV-1267 (W.D.La. March 29, 2005) (order awarding attorneys' fees).

on the hours and hourly billing rates they submitted to the Fee Committee and a multiplier. Barrett's implication was inaccurate, however. The Murray firm received a fee check for $33,000, inclusive of costs, a sum representing far less than the $114,310 fee the firm claims based on its hours, billing rates, and a multiplier of 2.3.

The hearing with the Fee Committee lasted only twenty minutes. At the end of the hearing, the court sealed the hearing transcript. Later on the same day, the district court signed—apparently without modification—the proposed order embodying both the proposed attorneys' fees and the procedural limitations on challenges. The order awarded almost half of the $6.875 million fee to the five members of the Fee Committee and their law firms. Appellants were awarded less than they had requested. Soon thereafter, Appellants requested the district court to reconsider its order and unseal Exhibit A, the fee allocation list.

[1] The court held an *in camera* hearing on these motions at which Appellants and members of the Fee Committee pre-

sented oral arguments on March 16, 2007. At the hearing, the court stated that it considered all of the factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974),[6] with regard to each attorney when it approved the fee allocation. The court later sealed the docket minute entry for the hearing and the hearing transcript. It also entered a sealed order allowing the parties to file supplemental memoranda and requiring the Fee Committee and the Appellants to meet and report back to the court.

On April 5, 2007, the court entered a sealed order denying the motions to reconsider and refusing to unseal Exhibit A. Appellants Silvestri, Massicot, Derbes, Murray, and Murray, and Caroll Farmer, a class member, filed a notice of appeal.[7] The district court subsequently entered orders unsealing Exhibit A and various other documents. This court granted Appellants' motion to instruct the district court to supplement the record on appeal with all documents and submissions reviewed by the district court prior to making its fee allocation order.[8]

---

6. The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

7. The *Times–Picayune,* a New Orleans based daily newspaper, also appealed the district court's order denying Appellants' motion to unseal the fee allocation list. However, the *Times–Picayune* was granted leave to dismiss

its appeal following the un-sealing of Exhibit A.

8. Appellants' time and expense statements and letters to the Fee Committee, the only documents of their kind in the record, were entered into the district court record in July 2007 after the district court supplemented the record in response to an order from this court. The supplemental record indicates that Barrett sent the district court these statements on February 15, 2007, after receiving a request from the court for them a day earlier. February 17 was almost a month after the court's ex parte hearing with the Fee Committee. Barrett attached to Appellants' statements an ex parte cover letter addressed to the court that asserted Silvestri and Derbes claimed "grossly excessive" hours and expenses and "did no real work which was for the common benefit of the class, but in fact worked to the detriment of the class."

---

## II. STANDARD OF

[2, 3] This court revie court's attorneys' fee awar discretion. *Strong v. B comms., Inc.,* 137 F.3d 84 1998). "To constitute an a tion, the district court's de either premised on an err tion of the law, or on an ass evidence that is clearly err *son v. Creative Artists Age* F.3d 524, 528 (5th Cir.20 determine whether "the re dicates that the district co the *Johnson* framework as analysis, has not proceede fashion, and has arrived at can be said to be just *Forbush v. J.C. Penney C* 823 (5th Cir.1996) (inte marks omitted).

Our review here is limit the procedures the distric allocate the $6.875 million neys' fee award among pla Because we must vacate a do not address whether awards to the Appellants reasonable.

## III. DISCUSS

[4, 5] Appellants cont court abused its discretion flawed procedures to awar torneys' fees and to revie those fees. We agree. F purposes the five-member controlled the allocation of in this case. In this cir court can in its discretion mittee of plaintiffs' counse

---

9. *See also Manual for C § 14.211 (4th ed. 2004) ( independent duty to review*

IN RE HIGH SULFUR CONTENT GASOLINE PRODUCTS LIAB.
Cite as 517 F.3d 220 (5th Cir. 2008)

## II. STANDARD OF REVIEW

[2, 3] This court reviews a district court's attorneys' fee awards for abuse of discretion. *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 850 (5th Cir. 1998). "To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous." *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 528 (5th Cir.2000). We must determine whether "the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation." *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 823 (5th Cir.1996) (internal quotation marks omitted).

Our review here is limited to one issue: the procedures the district court used to allocate the $6.875 million lump-sum attorneys' fee award among plaintiffs' counsel. Because we must vacate and remand, we do not address whether the individual awards to the Appellants were fair and reasonable.

## III. DISCUSSION

[4, 5] Appellants contend that the court abused its discretion because it used flawed procedures to award individual attorneys' fees and to review objections to those fees. We agree. For all practical purposes the five-member Fee Committee controlled the allocation of attorneys' fees in this case. In this circuit, a district court can in its discretion appoint a committee of plaintiffs' counsel to recommend

how to divide up an aggregate fee award. *Cf. Longden v. Sunderman,* 979 F.2d 1095 (5th Cir.1992). But the appointment of a committee does not relieve a district court of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards. Here, the district court abdicated its responsibility to ensure that the individual awards recommended by the Fee Committee were fair and reasonable. The court used flawed fee allocation procedures that are inconsistent with well-established class action principles and basic judicial standards of transparency and fairness. The following discussion explains the court's deviation from established class action principles, the Federal Rules of Civil Procedure, and Fifth Circuit caselaw.

### A. Class Action Principles

[6, 7] In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel. *See, e.g., Strong,* 137 F.3d at 849 ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."); *Manual for Complex Litigation* § 14.11 (4th ed. 2004) ("The court must distribute the [fee award] among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel.").[9] The court's duty to review attorneys' fees is no less compelling in common fund cases,[10]

---

9. *See also Manual for Complex Litigation* § 14.211 (4th ed. 2004) ("Judges have an independent duty to review fees and specifi-

cally determine if they are reasonable, applying traditional legal tests.").

10. "The common fund doctrine provides that a private plaintiff, or plaintiff's attorney,

like this case, where a separate fund to pay attorneys' fees is created as part of the class action settlement. *See Strong,* 137 F.3d at 849.

The district court's close scrutiny of fee awards serves to "protect the nonparty members of the class from unjust or unfair settlements affecting their rights as well as to minimize conflicts that may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses." *Id.* (internal quotations and citations omitted). The court's review also "guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Id.* (citing *In re GM Trucks,* 55 F.3d at 820 (emphasizing that the "court's oversight function" serves to deflect the "potential public misunderstandings that they may cultivate in regard to the interests of class counsel") (internal quotations and citations omitted); *Foster v. Boise–Cascade, Inc.,* 420 F.Supp. 674, 680 (S.D.Tex.1976), *aff'd,* 577 F.2d 335 (5th Cir.1978) (explaining that the court has the "obligation in any Rule 23 class action to protect [the class action device] from misuse" because the "most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees") (internal quotations and citations omitted)).

[8–12] To fulfill its duty, "the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." *Strong,* 137 F.3d at 850. Although exacting judicial review of fee applications may be burdensome, it is "necessary to discharge the [court's] obligation to award fees that are

whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys'

reasonable and consistent with governing law." *Manual for Complex Litigation* § 14.231 (4th ed. 2004). This circuit requires district courts to use the "lodestar method" to "assess attorneys' fees in class action suits." *Strong,* 137 F.3d at 850. The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney. *Id.* The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id.* The district court may adjust the lodestar upward or downward after a review of the twelve factors set forth in *Johnson. Forbush,* 98 F.3d at 821. After the court calculates the lodestar, it must scrutinize a fee award under the *Johnson* factors and not merely "ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir.1980) (holding that by summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court "abdicated its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone").

[13–16] When a district court awards attorneys' fees it must explain how each of the *Johnson* factors affects its award. *See Longden,* 979 F.2d at 1099–1100. Its *Johnson* analysis "need not be meticulously detailed to survive appellate review." *Forbush,* 98 F.3d at 823. If the district court has articulated and clearly applied the correct criteria, "we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more pa-

fees." *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 820 n. 39 (3d Cir.1995) [hereinafter *In re GM Trucks*].

per than did the cases from ‌‌rose." *Louisiana Power & Kellstrom,* 50 F.3d 319, 331 ( internal quotations and citati Nonetheless, the district co and reasons must be "comple assume a review which ca whether the court has used p criteria in exercising its disc just compensation." *Brantl 804 F.2d 321, 325–26 (5th Cir.

[17] In this case, althoug had been filed, the district c dently assessed the reasonab $6.875 million lump-sum a award and considered the *Jo* when it approved the class ment. Unfortunately, the fail further duty to monitor leg perfunctory approval of the termined by the Fee Commit ord indicates that the court Fee Committee's proposed and order around 11:30 a. parte hearing on January 22 ing the ensuing twenty minu questioned members of the tee about the allocation an sworn testimony was taken, were offered, and no affidav attesting to the accuracy or proposed fee allocation. Fu the hearing was ex parte, o attorneys, including Appella present to confirm or chall Committee's statements abo

11. The transcript of the Janu parte hearing suggests that th documentation and a repor Committee before the hearin ord does not contain these noted above in footnote 8, th expense statements and subm Fee Committee in the record court after the January 22, 20

12. The Times–Picayune of N published numerous news st

er than did the cases from which they arose." *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 331 (5th Cir.1995) (internal quotations and citations omitted). Nonetheless, the district court's findings and reasons must be "complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles,* 804 F.2d 321, 325–26 (5th Cir.1986).

[17]   In this case, although no objection had been filed, the district court independently assessed the reasonableness of the $6.875 million lump-sum attorneys' fee award and considered the *Johnson* factors when it approved the class action settlement. Unfortunately, it failed to fulfill its further duty to monitor legal fees by its perfunctory approval of the allocation determined by the Fee Committee. The record indicates that the court received the Fee Committee's proposed fee allocation and order around 11:30 a.m. at the ex parte hearing on January 22, 2007. During the ensuing twenty minutes, the court questioned members of the Fee Committee about the allocation and order. No sworn testimony was taken, no depositions were offered, and no affidavits were filed attesting to the accuracy or fairness of the proposed fee allocation. Further, because the hearing was ex parte, other plaintiffs' attorneys, including Appellants, were not present to confirm or challenge the Fee Committee's statements about their contri-butions to the case. After the hearing ended, the court spent at most one after-noon considering the Fee Committee's pro-posed allocation and order before approv-ing them.[11] The record speaks for itself. Instead of closely scrutinizing the Fee Committee's allocation, the court rubber-stamped the committee's recommendation.

The court made matters worse when it sealed the exhibit listing the individual fees and the record entries pertaining to fees and placed a gag order on the plain-tiffs' attorneys. These actions not only kept the public in the dark about each plaintiffs' attorney's award but also pre-vented counsel from communicating with each other and with their own clients on the subject. The lack of transparency about the individual fee awards supports a perception that many of these attorneys were more interested in accommodating themselves than the people they repre-sent.[12]

Two major errors pervade the court's process. First, despite the court's state-ments at the ex parte hearing that it con-sidered the *Johnson* factors, the record offers little substantiation that the court actually reviewed the individual fee awards. The district court set forth no factual findings and reasons to support its awards of individual attorneys' fees. The court's order merely recites without appli-cation the twelve *Johnson* factors and a laundry list of other relevant consider-ations.[13]   Moreover, the record is bereft of

---

11.   The transcript of the January 22, 2007 ex parte hearing suggests that the court received documentation and a report from the Fee Committee before the hearing. But the rec-ord does not contain these documents. As noted above in footnote 8, the only time and expense statements and submissions from the Fee Committee in the record were sent to the court after the January 22, 2007 hearing.

12.   The Times–Picayune of New Orleans has published numerous news stories and editori-als about the court's lack of transparency in this case. *See, e.g.,* Susan Finch, *Judge won't unseal fee records,* Times–Picayune, August 10, at 1; Susan Finch, *Judge seals records on legal fees in suit,* Times–Picayune, April 6, 2007, at 1.

13.   The court's order denying Appellants' mo-tion for reconsideration also simply lists the twelve *Johnson* factors in a footnote.  That order sets forth some brief findings and rea-sons why Appellants' awards should not be

factual information essential to the conduct of a *Johnson* analysis as well as appellate review. The record lacks the attorneys' time and expense statements,[14] letters, comments, hourly billing rates, and other materials allegedly submitted by the Fee Committee to the district court on or before the ex parte hearing on January 22, 2007. *See Manual for Complex Litigation* § 14.223 (4th ed. 2004) ("In advance of any fee-award hearing, counsel should submit time and expense records, to the extent not previously submitted with the motion and in manageable and comprehensible form ...."). Nor does the record contain a breakdown of the hours and rates claimed by each attorney or their respective lodestars. In other words, the record strongly suggests that at the time of the ex parte hearing the court possessed no documents, other than the Fee Committee's proposed fee allocation, upon which it could base factual findings for awards of individual attorneys' fees.

[18] This circuit, as will be discussed *infra*, does not forbid a district court to rely on fee allocation proposals submitted by attorneys. The proposals must, however, be factually supportable and consistent with the *Johnson* factors. Because the factual basis of the court's fee allocation remains unknown, this court cannot approve it.

[19] Second, a district court has the discretion to seal a record, "but we think that this discretion should be used with care and exercised only where the justifications for doing so appear considerably stronger than those" presented by the Fee

Committee. *In re Equal Employment Opportunity Commission,* 709 F.2d 392, 402 n. 7 (5th Cir.1983). The only justification posited for sealing the record here is to discourage internecine fee sharing disputes among the plaintiffs' lawyers. This is a weak and unconvincing reason for dispensing with the public nature of our judicial proceedings. Sealing the record protects no legitimate privacy interest that would overcome the public's right to be informed.

[20] On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Cianfrani,* 573 F.2d 835, 851 (3d Cir.1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment—publicly—on each other's relative contribution to the litigation.

**B.  Federal Rules of Civil Procedure**

[21] The fee allocation procedures used by the district court also failed to

comply with the Federal Rules of Civil Procedure. First, the court, in awarding attorneys' fees violated [Rule] 62(a), which imposes a ten-day stay on the enforcement of judgments. Fed.R.Civ.P. 62(a). Contrary to the ... the order required that awards "be distributed immediately." This is not a trivial deviation. ... appears designed to forestall ... by creating an incentive for the ... to "take their money and run" ... they signed the release of claims ... significant, immediate payments ... serious obstacle to re-allocation should the court later alter ... the court, as its order acknowledged, would be placed in the difficult ... collecting pro rata sums from ... attorneys. Immediate payment ... discouraged the court from trying to ... scramble an unfair or erroneous ... location.

[22, 23] Second, the court violated ... 23(h), which permits but does not require ... district court to hold a hearing on a motion for attorneys' fees in a class action. Fed.R.Civ.P. 23(h). If a court chooses to hold a "fee-determination hearing," the hearing format itself ha[s] to comport with ... other words, when a judge chooses a ... process for setting fees, the process must ... contain at least the procedural elements of ... due process: notice and an opportunity to ... be heard. *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,* 982 F.2d 603, 614 (1st Cir.1992) (reversing fee award in large-scale consolidated case in which lawyers from a ... committee were permitted to cross-examine witnesses, and offer oral argument at evidentiary hearing, but others representing individual clients could not); *see also In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 584 (3d Cir.1984) (holding that "the hearing on a fee application

increased or reconsidered. But they also provide an inadequate basis for appellate review because, as discussed below, the court's procedures for reviewing objections to the fee awards were inherently flawed.

ply with the Federal Rules of Civil Procedure. First, the court's order awarding attorneys' fees violated Rule 62(a), which imposes a ten-day automatic stay on the enforcement of judgments. See Fed.R.Civ.P. 62(a). Contrary to this rule, the order required that the fee awards "be distributed immediately." This is not a trivial deviation. Indeed, it appears designed to forestall fee disputes by creating an incentive for the attorneys to "take their money and run" as soon as they signed the release of claims. More significant, immediate payments erect a serious obstacle to re-allocating fees, should the court later alter its award. The court, as its order acknowledges, would be placed in the difficult position of collecting pro rata sums from dozens of attorneys. Immediate payment essentially discouraged the court from trying to unscramble an unfair or erroneous initial allocation.

[22, 23] Second, the court violated Rule 23(h), which permits but does not require a district court to hold a hearing on a motion for attorneys' fees in a class action. See Fed.R.Civ.P. 23(h). If a court chooses to hold a "fee-determination hearing, the hearing format itself ha[s] to be fair. In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima" of due process: notice and an opportunity to be heard. In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 614 (1st Cir.1992) (reversing fee award in large-scale consolidated case in which lawyers from steering committee were permitted to testify, examine witnesses, and offer oral argument at evidentiary hearing, but other lawyers representing individual clients were not); see also In re Fine Paper Antitrust Litig., 751 F.2d 562, 584 (3d Cir.1984) (stating that "the hearing on a fee application in an

equitable fund case requires compliance with those procedural rules which assure fair notice and an adequate opportunity to be heard. Equally plainly, the requirement of an evidentiary hearing demands the application in that hearing of the Federal Rules of Evidence"); Alan Hirsch & Diane Sheehey, Fed. Judicial Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* 81 (2d ed. 2005) ("If a hearing is held, the court should ensure that all attorneys staking a claim to fees are given a reasonable opportunity to be heard.").

While holding a hearing may be discretionary, the decision to convene an ex parte hearing was plainly unauthorized. Non-Fee Committee members were entitled to notice and an opportunity to be heard. The court commented to the Fee Committee that the ex parte hearing might raise due process concerns among absent attorneys. Its fears were fully justified because the Fee Committee exploited its opportunity to explain the proposed allocation at the ex parte hearing without challenge and without proof of Barrett's statements denigrating Appellants' contributions for the common benefit. Nor were Barrett and Barnow, the co-lead counsel, called upon to explain the coincidence that under the *Johnson* factors they were entitled to identical fees.

[24] Nonetheless, Appellees contend that Appellants agreed to a fee allocation process involving ex parte hearings because they did not object to the court's appointment of a Fee Committee. We disagree. Ex parte proceedings are an exception to the rule in our judicial system and contrary to its adversarial nature. See, e.g., McKinney v. Paskett, 753 F.Supp. 861, 863 (D.Idaho 1990) ("The petitioner in this civil proceeding seeks unilateral in camera secrecy. This clearly flies in conflict with ... the rules of civil procedure which allow ex parte hearings

only in emergency matters.").[15]   Attorneys cannot simply agree to hold secret hearings before the court. Moreover, the attorneys in this case made no agreement that ex parte hearings would be part of the fee allocation process. The court's order appointing the Fee Committee included no such provision, and there is no basis to infer an agreement.

Appellees also contend that the court's post-allocation procedures for hearing or reconsidering objections to fee awards provided Appellants an adequate opportunity to be heard. They did not. Because the court sealed the fee allocation list and placed a gag order on plaintiffs' attorneys, Appellants could not compare their awards to those of other attorneys.[16] They were not furnished with the hours and rates that other attorneys submitted or informed of the Fee Committee's process, yet such information was essential to enable them to challenge how the Fee Committee valued their work. *See In re Vitamins Antitrust Litig.*, 398 F.Supp.2d 209, 234 (D.D.C.2005) (lead counsel responsible for fee allocation must "apply a universally fair standard of allocation to all participants, including itself"). One cannot even compare apples to oranges without knowing what the oranges are.

The district court was similarly handicapped in its review of Appellants' objections to their fee awards. The order approving the Fee Committee's allocation limited the court's review of a fee award to its specific circumstances and the relationship between the award and the attorney's contributions to the common benefit of the class.[17] The court should not have so limited itself and should have been able to compare the contributions of all plaintiffs' attorneys in order to determine if the fee allocation was equitable. After all, "[a]llocation means proportion; how does the share [one] counsel is taking compare to the shares others are getting?" *In re Vitamins Antitrust Litig.*, 398 F.Supp.2d at 234. Because Appellants were deprived of information necessary to contest their fee awards, and the court's review did not allow comparison between Appellants' and other attorneys' awards, the procedures for reviewing Appellant's objections were inherently flawed.[18]

---

**15.** *See also* Fed.R.Civ.P. 5(a) ("Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties."); Fed.R.Civ.P. 6(d) ("A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court.").

**16.** The court eventually unsealed the fee allocation list, but only *after* the court denied Appellants' motion for reconsideration.

**17.** Nonetheless, the court's order implicitly recognizes that allocating fees requires making comparisons between the work of attorneys. The order states that if "any adjustments are made [to a fee award], anyone having previously accepted their individual allocation will be subject to a pro rata adjustment, i.e., proceeds may have to be returned to fund increases or there may be additional payments if awards are decreased."

**18.** Other guidelines for minimal procedural protections appear in the federal rules governing special masters and magistrate judges, who may be asked by a district court to oversee an attorneys' fee allocation. *See e.g.* Fed. R.Civ.P. 23(h)(4); Fed.R.Civ.P. 53 (special masters); Fed.R.Civ.P. 72(b) (magistrate judges). In either situation, all interested

*In re Copley Pharmaceutical, Inc.,* 50 F.Supp.2d 1141 (D.Wyo.1999), *aff'd,* 232 F.3d 900 (10th Cir.2000) [hereinafter *Copley*], a case cited by Appellees, illuminates the deficiencies in the court's procedures. *Copley* was a class action in which the district court appointed a fee committee to recommend the allocation of a lump-sum fee award. After a contested hearing at which the court approved the fee committee's proposal, several attorneys objected to their awards.[19] In response to the objections the court held a de novo hearing, received motions, and reviewed time and expense statements and other materials. The court did not limit its review to the fee awards and contributions of the objectors. Instead, it reviewed the entire fee allocation and all attorneys' contributions.[20] Because its order approving the fee allocation had been brief, the court wrote a detailed decision explaining its review of the fee allocation and why it concluded the allocation was correct. The court's decision applied the *Johnson* factors. It also set forth findings and reasons explaining its allocations to lead counsel, who ran the fee committee and received the largest awards, and the objectors. The methodology followed by the *Copley* court is a helpful model for other district courts.

### C. Attorneys' Fee Awards in the Fifth Circuit

Appellees defend the court's unorthodox procedures by relying on *Longden, supra,* in which this court sustained a district court's reliance on the fee allocation proposed by a committee of plaintiffs' lawyers. *Longden* is clearly distinguishable and of narrower applicability than Appellees suggest. In *Longden,* this court held that a district court acted within its discretion when it awarded a lump-sum fee award and then let plaintiffs' counsel, except for one objecting attorney, allocate the award by agreement among themselves. 979 F.2d at 1101. The court determined the objector's individual fee award because she objected to co-counsels' aggregate fee award petition to the court. Her award was taken out of the lump-sum award for all attorneys. To calculate the objector's individual fee award and determine the lump-sum fee award, the court reviewed the time and expense records of all plaintiffs' counsel, applying the *Johnson* factors and making findings "sufficiently based on record evidence." *Id. Longden* highlights the district court's duty to scrutinize the allocation of a fee award when an attorney objects to his co-counsels' fee award recommendations. It does not stand for the

---

parties present their data to the deciding officer; have limited if any right to engage in ex parte contacts; and may, on a fully developed record, seek reconsideration or modification of the allocation by the district court. The transparency and completeness of special master and magistrate judge procedures highlight the abnormality of the district court's approach here.

**19.** We express no opinion on the negotiation process by which Lead Counsel in *Copley* arrived at the proposed fee allocations. The process was challenged as violating constitutional due process, but any deficiency was remedied by the court's de novo review. It is the court's procedure, not those employed by counsel, which is relevant here.

**20.** "While each objector, as he should, does not suggest how the Court should decide this matter overall, that is exactly what the Court must do. Necessarily, in a situation such as this where the Court is working with a finite amount of money, when one person gets more, another must get less. Accordingly, when the Court assesses the objectors' arguments why they should get more, it necessarily had to consider why another attorney should get less in an attempt to find where the equitable allocation lay. Although not stated in the remainder of the Court's Order, it was under this premise that it evaluated each award." *Copley,* 50 F.Supp.2d at 1153.

proposition that courts can delegate their duty to allocate a fee award to a committee of interested attorneys who have reached no agreement among themselves and then approve the allocation after a perfunctory review.

Appellees cite several district court cases from this circuit in which courts followed the procedure approved in *Longden*: awarding a lump-sum attorneys' fee and allowing counsel to divide up the award by agreement. *See, e.g., Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 869–70 (E.D.La.2007).[21] That fee allocation procedure, however, is significantly different from the procedures used here. It is one thing for all attorneys to come to an agreement about dividing up fees, and quite another for five attorneys to declare how an award will cover themselves and seventy-four other attorneys with no meaningful judicial supervision or review.

Appellees also cite a number of cases, largely from other circuits, in which courts have appointed committees of attorneys to propose a fee allocation to the court for its consideration. *See, e.g., Copley*, 50 F.Supp.2d at 1148–49. We do not dispute the utility of initial delegation, which is not required but is within the district court's discretion. There is no indication, however, that the district courts in other cases dispensed with traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight as the court in this case did. Even *In re Eunice Train Derailment*, the case mentioned by the Fee Committee at the ex parte hearing to justify placing the fee allocation list under seal, shows that other

courts are not doing what Appellees convinced the court to do here.

Like the court in this case, the court in *In re Eunice Train Derailment* appointed a fee committee to recommend an allocation, placed its fee allocation list under seal, and prohibited plaintiffs' attorneys from disclosing their fee awards. But, unlike this case, the court required attorneys to submit their contemporaneous time records to a special master. The court's order limited the gag order to sixty days.[22] Finally, the court ordered fee distribution to occur only after attorneys were told their fee awards and after the deadlines for objection or appeal had expired. Here, in contrast, there was no disinterested court officer, such as a special master, working with the Fee Committee to review attorneys' time and expense statements; the fee record was placed under seal indefinitely and attorneys were also barred indefinitely from disclosing their awards; and fees were ordered to be paid "immediately," before any challenges could be filed.

Appellees' contend that the functional value of appointing a committee of attorneys to propose a fee allocation in "complex litigation is significant, and the danger of abuse is small, when judged in light of the guiding effect of judicial supervision." It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because

"counsel have inherent con[...] *Diet Drugs Products Liab. L[...]* 143, 173 (3d Cir.2005) (Amb[...] ring). As Judge Ambro[...] make recommendations on t[...] and thus have a financial i[...] outcome. How much defere[...] fox who recommends how to [...] chickens?" *Id.*

Here, members of the Fe[...] "had a direct conflict of i[...] were suggesting to the Distr[...] to proceed on matters nea[...] dividing a limited fund amo[...] and other firms. Such a dir[...] interest strongly suggests t[...] substantial deference is i[...] *Id.* at 173–74. Although the [...] cation "may ultimately be fa[...] tention must be paid to the [...] which the allocation is set." [...] court "chooses to rely on the [...] tions of a committee of int[...] neys, it then becomes necess[...] nize more closely those recor[...] *Id.*

## IV. CONCLUSI[...]

For the foregoing reasons, [...] district court's order award[...] attorneys' fees and its order[...] pellants' motion for reconsi[...] remand, the district court sh[...] on an adequate factual recor[...] plication of the *Johnson* fac[...] quacy of the Fee Commit[...] mended allocation and the fe[...] any attorneys who choose t[...] particular, the court shall [...] needed, counsels' respective [...] for the common benefit. No [...] parte communications will [...] The final award shall be su[...] ported with written reasons [...] judicial review.

---

21. In some of these cases, the court also stipulated that if counsel were unable to agree upon an allocation, it would appoint a special master to recommend a fee allocation. *See, e.g., Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d. at 869–70; *Batchelder v. Kerr–*

*McGee Corp.*, 246 F.Supp.2d 525, 534 (N.D.Miss.2003).

22. We do not approve any gag order or sealing of the record in these cases, but the *Eunice* order was at least more limited than this one.

counsel have inherent conflicts." *In re Diet Drugs Products Liab. Litig.*, 401 F.3d 143, 173 (3d Cir.2005) (Ambro, J., concurring). As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?" *Id.*

Here, members of the Fee Committee "had a direct conflict of interest: they were suggesting to the District Court how to proceed on matters near and dear—dividing a limited fund among themselves and other firms. Such a direct conflict of interest strongly suggests that affording substantial deference is inappropriate." *Id.* at 173–74. Although the proposed allocation "may ultimately be fair, careful attention must be paid to the procedures by which the allocation is set." If a district court "chooses to rely on the recommendations of a committee of interested attorneys, it then becomes necessary to scrutinize more closely those recommendations." *Id.*

## IV.  CONCLUSION

For the foregoing reasons, we vacate the district court's order awarding individual attorneys' fees and its order denying Appellants' motion for reconsideration. On remand, the district court shall determine, on an adequate factual record and by application of the *Johnson* factors, the adequacy of the Fee Committee's recommended allocation and the fee requests of any attorneys who choose to object. In particular, the court shall compare, as needed, counsels' respective contributions for the common benefit. No sealing or ex parte communications will be permitted. The final award shall be sufficiently supported with written reasons to facilitate judicial review.

The order of the district court is thus VACATED and REMANDED WITH INSTRUCTIONS.

REAVLEY, Circuit Judge, specially concurring:

I concur in the judgment, and I agree generally with this description of the procedure required for the fee allocation. The procedure was not followed: appellants were given no opportunity to study and dispute the allocation, the district court has not explained the allocations, and we have no record to permit our review.

It does appear to me that class counsel performed excellent work to obtain in excess of $99 million for the class. Those attorneys who contributed to that recovery are entitled to receive fees based on the quantity and quality of effort expended for that purpose. And other lawyers for members of the class are also entitled to receive compensation for their efforts to serve that purpose. The allocation may be initiated by those attorneys who actually managed the case. Any dispute about that allocation must be resolved by the court after full and fair hearing, considering the *Johnson* factors where appropriate, explaining its decision for all and for our review—affording that court discretion.



**WALK HAYDEL & ASSOCIATES, INC., Plaintiff,**

**v.**

**COASTAL POWER PRODUCTION COMPANY; et al., Defendants.**



RECEIVED

OCT 1 4 2008

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN THE MATTER OF                              MISCELLANEOUS

ASHTON R. O'DWYER, JR.                        NO. 08-1492 "B"

**RESPONDENT'S MEMORANDUM IN SUPPORT**
**OF HIS MOTION FOR RECUSAL OF JUDGE LEMELLE**
**AND INCORPORATED DECLARATIONS UNDER**
**PENALTY OF PERJURY PURSUANT TO**
**28 U.S.C. §1746**

> The recondite niceties of contempt law coupled with the strange milieu of
> a judge passing on the clarity of his own orders, which had to be
> substantiated largely by his own legal staff, should make us particularly
> sensitive to the demands of justice, and more particularly, to the
> appearance of justice. The guarantee to the [litigants] of a totally fair and
> impartial tribunal, and the protection of the integrity and dignity of the
> judicial process from any hint or appearance of bias is the palladium of
> our judicial system. <u>United States v. Columbia Broadcasting System, Inc.</u>,
> 497 F.2d 107 (5th Cir. 1974). (insert added).

**THE FACTS**

Respondent, Ashton R. O'Dwyer, Jr., has moved for the recusal of Judge Lemelle

in these proceedings on grounds of bias, prejudice and partiality. The Motion for Recusal

was filed pursuant to the provisions of 28 U.S.C. §144 and/or 28 U.S.C. §455(a) and/or

28 U.S.C. §455(b)(1). Additionally, the Motion for Recusal was filed without prejudice

to the grounds for Judge Lemelle's recusal previously asserted by Respondent in these

proceedings, by arguing that Judge Lemelle has a conflict of interests, because he is a

1

named defendant in Civil Action No. 08-31070 on the docket of this Court,[1] as well as

Judge Lemelle's inability to be fair and impartial in these proceedings, which Respondent

averred were brought against him in retaliation to Respondent's allegations of judicial

misconduct against a "Brother Judge" of Judge Lemelle, namely Stanwood R. Duval, Jr.[2]

Since the proceedings which were held in Open Court on October 8, 2008, during which

Judge Lemelle made a Report and Recommendation "on the record" that Respondent's

privileges to practice law before This Court should be suspended, it has been brought to

Respondent's attention that Judge Lemelle is himself a well-documented "rule breaker",

who has violated the Code of Conduct for United States Judges, all as more fully appears

in the reported case of In Re: High Sulphur Content Gasoline Products Liability

Litigation, 517 F.3d 220 (5th Cir. 2008).  In that case Judge Lemelle also is believed to

have made very generous awards of attorney's fees to some of the very same plaintiff's

attorneys whose disqualification Respondent has sought in "Victims of KATRINA"

litigation as a result of their violation of the Rules of Professional Conduct.  Further,

although Respondent avers that Judge Lemelle was under an ethical and legal obligation

to do so, Judge Lemelle failed to disclose to Respondent in these proceedings either his

extra-judicial relationship(s) with some of the very same plaintiffs' attorneys in "Victims

of KATRINA" litigation, or his own judicial misconduct and abuse of judicial discretion

in the cited case, which included the following:

---

[1] Three (3) judges, namely Judges Fallon, Feldman and McNamara, have already recused themselves in cases involving Respondent for this very same reason.

[2] And in retaliation for Respondent's suing the State of Louisiana in "Victims of KATRINA" litigation, arguing waiver of 11th Amendment immunity by the State, and seeking disqualification of some "high profile" plaintiffs' lawyers, one of whom is a "close personal friend of long-standing" to Judge Duval, and who represented the interests of the State in the "Victims of KATRINA" litigation, at least until Thursday, October 9, 2008.

2

1)    The reported case reflects that Judge Lemelle has a well-documented "history" of rule-breaking and denial of due process of law to litigants and their attorneys.

2)    Abdicated his responsibility to ensure that individual awards recommended by the "Fee Committee" were fair and reasonable.  517 F.3d at p. 227.

3)    Used "flawed fee allocation procedures" that were "inconsistent with well-established class action principles and basic judicial standards of transparency and fairness".  517 F.3d at 227.

4)    Employed unauthorized and objectionable processes which included accepting "Lead Counsel's" proposed fee allocations without benefit of supporting data, sealed the individual awards, prevented counsel from communicating with anyone about the awards, required releases from counsel who accepted payment, and limited its own scope of review of objections to allocations, resulting in an "inherently flawed" review procedure.  517 F.3d at pp. 223-224, 232.

5)    Failed to discharge its duty to monitor legal fees by the perfunctory approval of the allocation determined by the "Fee Committee".  517 F.3d at p. 229.

6)    Scheduled and participated in at least one (1) ex parte "hearing", without notice to the other litigants through their attorneys, thus depriving them of the opportunity to confirm or challenge the Fee Committee's statements about their contributions to the case.  517 F.3d at pp. 229, 231.

7)    Rubber-stamped the Fee Committee's recommendation after one afternoon of "deliberation", instead of closely scrutinizing the Fee Committee's proposed allocation.  517 F.3d at pp. 229, 234.

8)    Allocated generous fees to "insider" lawyers, pursuant to a "secret" formula, and placing a "gag" order on the attorneys, which kept the public, the litigants and their attorneys "in the dark" about matters they were legally entitled to know.  517 F.3d at p. 229.

9)    Misrepresented on the record that he had considered the factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974), when the record failed to support that representation.  517 F.3d at pp. 229-230.

10)    Improvidently sealed parts of the record without good reason.  517 F.3d at p. 230.

11)    Entered sealed orders, which he refused to unseal.  517 F.3d at 232.

3

12) Failed to recognize the inherent "conflict of interests" which the Fee Committee had in recommending fee allocations and deferring to the Committee's recommendations. 517 F.3d at pp. 234-235.

13) When confronted with the provisions of the Federal Rules of Civil Procedure, the Code of Conduct for United States Judges, and the Rules of Professional Conduct, "circling the wagons" and failing to follow the rules himself or require others to follow the rules.

14) Ran afoul of Rule 62(a) by ordering that fees be disbursed immediately. 517 F.3d at pp. 230-231.

15) Violated Rule 23(h) by failing to ensure that the process for settling fees was "fair". 517 F.3d at p. 231.

Respondent finds it noteworthily ironic that none of the allegations against him in these disciplinary proceedings remotely approach the above-cited reprehensible behavior by a Federal Judge. Yet, Respondent faces the loss of his livelihood, whereas the "sentencing judge" in this case has not been disciplined for his own misconduct.

Had Respondent known about those matters[3] prior to the time that Judge Lemelle made his Report and Recommendation on October 8, 2008, then Respondent would have voiced objection then. Accordingly, in addition to the conflict of interests which Judge Lemelle has because he is a named defendant in Civil Action No. 08-3170 on the docket of this Court, and in addition to the bias, prejudice and partiality which Judge Lemelle has by virtue of the fact that these proceedings involve allegations of judicial misconduct against a "Brother Judge", Respondent avers that an additional reason for recusal on the grounds of bias, prejudice and partiality stems directly from Judge Lemelle's judicial

---

[3] And the fact that Respondent's attempt to have Judge Duval recused in "Victims of KATRINA" litigation was cited to Judge Lemelle by the "Fee Committee" in the cited proceedings, in opposition to efforts to have Judge Lemelle recused in that case, another fact which was not disclosed to Respondent by Judge Lemelle. Record Document No. 210 in Civil Action No. 04-1632. Respondent avers that he was defamed in the Fee Committee memorandum, and that Judge Lemelle became "poisoned" towards Respondent.

4

misconduct in the "In Re: High Surphur Content Gasoline Products Liability Litigation, supra. In plain, simply English, it is patently obvious that Judge Lemelle has "trouble" following the rules and that he reacts very badly towards ethical, professional individuals who deign to aver that a Federal Judge and his "friends" may have broken the rules.

# THE LAW

As was the case in United States v. Miranne, 688 F.2d 980 (5th Cir. 1982), Respondent has filed a motion for disqualification or recusal of Judge Lemelle pursuant to both 28 U.S.C. §144 and 28 U.S.C. §455(a).[4] As the Fifth Circuit stated in United States v. Miranne, supra

> As stated in *Davis v. Board of School Commissioners* of *Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975):
>
> "Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavits, but may not pass on the truth of the matter alleged."
>
> In order to be legally sufficient, the affidavit must meet, among other requirements, the following test:
>
> "1.    The facts must be material and stated with particularity;
>
> "2.    The facts must be such that, if true they would convince a reasonable man that a bias exists;
>
> "3.    The facts must show the bias is personal, as opposed to judicial, I nature."
>
> (citations omitted). 688 F.2d at p. 985.

---

[1] Movers also have invoked 28 U.S.C. §455(b)(1) in the body of their motion, because that statute was addressed by the Court in its Order and Reasons of January 17, 2008. (Record Document No. 10615). If the Court is recused pursuant to 28 U.S.C. § 455(a), then it is not necessary to reach recusal under 28 U.S.C. § 455(b)(1).

---

[4] Respondent also has invoked 28 U.S.C. §455(b)(1) in the body of his motion. If the Court is recused pursuant to 28 U.S.C. §455((a), then it is not necessary to reach recusal under 28 U.S.C. §455(b)(1).

Thus, the standard for recusal pursuant to 28 U.S.C. § 144 is whether the affidavit alleges facts which support the contention that "an actual and present bias existed". 688 F.2d at p. 985.

In United States v. Miranne, supra, United States Court of Appeals for the Fifth Circuit also addressed 28 U.S.C. § 455(a), as follows:

> Section 455(a) is a self-enforcing statutory standard for disqualification of a judge. *Davis*, supra at 1051. It is broader than § 144 in that it requires a judge to disqualify himself when "his impartiality might reasonably be questioned." Thus, under § 455(a) an actual demonstrated prejudice need not exist in order for a judge to be required to recuse himself. 688 F.2d at p. 985.

Because these disciplinary proceedings are quasi-criminal in nature, and have potential for destroying Respondent's means of earning a living,  Respondent will now expand on the foregoing general rules with the following axioms developed from a detailed analysis of cases emanating from the Fifth Circuit in matters of disqualification and recusal of Judges.

## 28 U.S.C. §144 AND 28 U.S.C. §455(a) SHOULD BE CONSIDERED *IN PARI MATERIA*

- 28 U.S.C. § 144 and 28 U.S.C. § 455(a) should be considered *in pari materia*; the test for disqualification or recusal may be considered the same under both. Davis v. Board of School commissioners of Mobile County, 517 F.2d 1044 (5th Cir. 1975).

## MOTIONS FOR RECUSAL
## PURSUANT TO 28 U.S.C. §144 OR
## 28 U.S.C. §455(a) ARE WITHIN THE
## SOUND DISCRETION OF THE
## DISTRICT JUDGE

• A motion for recusal is within the discretion of the District Judge, and denial of such a

motion will not be reversed on appeal unless the Judge has abused his discretion. U.S. v.

Anderson, 160 F.3d 231 (5th Cir. 1998) and cases cited therein.

## THE GOAL OF THE DISQUALIFICATION
## STATUTES IS TO PROMOTE PUBLIC
## CONFIDENCE IN THE JUDICIAL SYSTEM

• The goal of the disqualification statutes, is to "promote public confidence in the judicial

system by avoiding even the appearance of partiality" even though no actual partiality

exists, as is the case in which a judge is pure of heart and incorruptible.

Health Services Acquisition Corp. v. Liljeberg, 796 F.2d 796, 800, 802 (5th Cir. 1986).

Chitimacha Tribe v. Harry L. Laws Co., 690 F.2d 1157, 1165 (5th Cir. 1982), cert. denied,
464 U.S. 814, 104 S.Ct. 69 (1983).

Henderson v. Department of Public Safety and Corrections, 901 F.2d 1288 (5th Cir.
1990).

## AVOIDING EVEN THE APPEARANCE
## OF IMPROPRIETY IS IMPORTANT

• Revisions made in 1974 to 28 U.C.C. § 455 dealing with disqualification of Judges

require the grounds for bias and prejudice to be evaluated on an objective basis, so that

what matters is not the REALITY of bias or prejudice, but its APPEARANCE; recusal is

required whenever impartiality might reasonably be questioned.

Liteky v. U.S., 114 S.Ct. 1147 (1994).

• The purpose of 28 U.S.C. § 455(a), and the principle of recusal itself, is not just to prevent ACTUAL partiality, but to "avoid even the appearance of partiality". Republic of Panama v. The American Tobacco Company Inc., 217 F.3d 343 (5th Cir. 2000) and cases cited therein.

• Avoiding the appearance if impropriety is as important in developing public confidence in the judicial system as avoiding impropriety itself. U.S. v. Jordan, 49 F.3d 152 (5th Cir. 1995).

• Because the goal of the recusal statutes is to exact the appearance of impartiality, recusal may be mandated even though no actual partiality exists. U.S. v. Bremers, 195 F.3rd 221 (5th Cir. 1999).

In re Continental Airlines Corp., 901 F.2d 1259 (5th Cir. 1990) and cases cited therein.

U.S. v. Miranne, 688 F.2d 980 (5th Cir. 1982).

• Under 28 U.S.C. § 455(a), if a judge concludes that his impartiality might reasonably be questioned, then he should find that the statute requires his recusal.

U.S. v. Anderson, 160 F.3rd 231 (5th Cir. 1998) and cases cited therein.

## 28 U.S.C. § 455 (a) MANDATES RECUSAL IN ANY SITUATION IN WHICH A JUDGE'S PARTIALITY MIGHT REASONABLY BE QUESTIONED

• 28 U.S.C. § 455(a) mandates recusal in any situation in which a Judge's partiality might reasonably be questioned.

In re Continental Airlines Corp., 901 F.2d 1259 (5th Cir. 1990); Whitehurst v. Wright, 592 F.2d 834 (5th Cir. 1979).

## REASONABLE MAN STANDARD

• The recusal inquiry for a judge based upon perceived lack of impartiality must be made from the perspective of a reasonable, thoughtful objective observer who is informed of all the surrounding facts and circumstances.

Cheney v. U.S. District court for the District of Columbia, 124 S.Ct. 1391 (2004).

Trust Company of Louisiana v. N.N.P. Inc., 104 F.3rd 1478 (5th Cir. 1997).

• In determining whether a Federal Judge should recuse himself or herself, the relevant inquiry is whether a reasonable man, were he to know all of the circumstances, would harbor doubts about the Judge's impartiality.

Patterson v. Mobil Oil Corp., 335 F.3rd 476 (5th Cir. 2003).

IQ Products Co. v. Pennzoil Products Co., 305 F.3rd 368 (5th Cir. 2002);

Trevino v. Johnson, 168 F.3rd 173 (5th Cir. 1999);

U.S. v. Anderson, 160 F.3rd 231 (5th Cir. 1998);

Health Services Acquisition Corp. v. Liljeberg, 796 (5th Cir. 1986).

• Stated another way, in order to determine whether a Court's impartiality is reasonably in question, as required in order to compel a Judge to disqualify himself or herself, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the Court's impartiality.

Trust Co. of Louisiana v. N.N.P. Inc., 104 F.3rd 1478 (5th Cir. 1997).

• The analysis must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the facts and circumstances of the particular claim.

Republic of Panama v. American Tobacco Co., Inc., 217 F.3rd 343 (5th Cir. 2000).

## EXTRA-JUDICIAL PERSONAL BIAS OR PREJUDICE IS REQUIRED FOR DISQUALIFICATION

• Under the two statutes which govern recusal of U.S. District Court Judges, based on bias, prejudice or partiality, the alleged bias must be personal, or extra-judicial, as distinguished from judicial in nature. To be disqualifying, the alleged bias or prejudice of a judge must be "derived from an extra-judicial source", and not based upon in-Court rulings.

U.S. v. Scroggins, 485 F.3d 824 (5th Cir. 2007).

In re Corrugated Container Antitrust Litigation, 752 F.2d 137 (5th Cir. 1985).

United States v. Phillips, 664 F.2d 971 (5th Cir. 1981).

## EVEN JUDICIAL BIAS AND PREJUDICE WARRANTS RECUSAL UNDER CERTAIN CIRCUMSTANCES

• An exception to the general rule that the disqualifying bias or prejudice must stem from extra-judicial sources exists in the situation in which such pervasive bias and prejudice is shown by judicial conduct as would constitute bias and prejudice against a party.

U.S. v. Phillips, 664 F.2d 971 (5th Cir. 1981).

• In other words, the fact that a judge's remarks or behavior take place in the judicial context does not exclude them from scrutiny and from requiring recusal if they reflect such pervasive bias and prejudice as would constitute bias against a party.

Phillips v. Joint Legislative Committee on Performance and Expenditure Review of State of Mississippi, 637 F.2d 1014 (5th Cir. 1981).

• Recusal can be based on "extra-judicial" factors, such as bias based on family relationships or other extra-judicial influences, or "intra-judicial factors", such as bias based on facts introduced or events occurring in the course of the current proceedings.

Stringer v. Astrue, 2007 WL 3151804 (5th Cir.)

• In the Fifth Circuit, adverse judicial rulings will support a claim of bias and prejudice if they reveal an opinion based on an extra-judicial source, or if they demonstrate such a high degree of antagonism as to make fair judgment impossible.

U.S. Scroggins, 485 F.3rd 824 (5th cir. 2007);

In re Chevron U.S.A., Inc., 121 F.3rd 163 (5th Cir. 1997).

## ESTABLISHING BIAS OR PREJUDICE REQUIRES MORE THAN WHAT CAN BE EXPECTED OF IMPERFECT MEN AND WOMEN, EVEN THOSE CONFIRMED AS FEDERAL JUDGES

• Not establishing bias or partiality of a judge are expressions of impatience, dissatisfaction, annoyance and even anger.

Matassarin v. Lynch, 174 F.3rd 549 (5th Cir. 1999).

11

## WHERE THE QUESTION OF RECUSAL IS
## A CLOSE ONE, THE BALANCE TIPS
## IN FAVOR OF RECUSAL

• If the question of recusal is a close one, the balance tips in favor of recusal.

Republic of Panama v. The American Tobacco Company, Inc., 217 F.3rd 343 (5th Cir. 2000) and cases cited therein.

## AN APPELLATE COURT'S REVIEW
## OF A RECUSAL ORDER IS FACT INTENSIVE
## AND IS REVIEWED ON AN ABUSE OF
## DISCRETION STANDARD

• Appellate review of a recusal order is "extremely fact intensive and fact bound", with

the District Judge's denial of a motion to recuse being reviewed by an abuse of discretion

standard.

Republic of Panama v. The American Tobacco Company, Inc., 217 F.3rd 343 (5th Cir. 2000);
U.S. v. Bremers, 195 F.3rd 221 (5th Cir. 1999).

## CONCLUSION

The quandary which faces judges who want "to do the right thing" was described

very aptly by the Fifth Circuit in U.S. v. Jordan, 49 F.3rd 152 (5th Cir. 1995):

> "The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence I the impartiality of our judges and the proceedings over which they preside". U.S. v. Jordan, 49 F.3d 152 (5th Cir. 1995).

Not only has Respondent been deprived of his right to a "trial", but he also avers

that the "tribunal" in these proceedings, i.e., Your Honor, is biased and prejudiced, most

recently as a result of Respondent's allegations in this case "hitting a little too close to home" because of what the Court of Appeals for the Fifth Circuit said about Your Honor in <u>In re:  High Sulphur Content Gasoline Products Liability Litigation</u>, supra, which are not that "far off the mark" from Respondent's allegations about judicial misconduct by Judge Duval in "Victims of KATRINA" litigation.  Your Honor's bias, prejudice and lack of impartiality deprived Respondent of fundamental fairness as to vitiate the Report and Recommendation pursuant to the due process clause.  Your Honor should recognize the "appearance" of bias and prejudice and recuse himself.

## DECLARATION PURSUANT TO
## 28 U.S.C. §1746

I declare under penalty of perjury under the laws of the United States that the averments and arguments contained herein are true and correct.

Respectfully submitted,

**Ashton R. O'Dwyer, Jr.**
**In Proper Person**
**Law Offices of Ashton R. O'Dwyer, Jr.**
Bar No. 10166
821 Baronne Street
New Orleans, LA 70113
Tel.:  (504) 679-6166
Fax.  (504) 581-4336